## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| MUNCK WILSON MANDALA LLP, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:22-cv-01657-M |
| | § | |
| MARK D. JORDAN, et al., | § | |
| | § | |
| Defendants. | § | |
| | § | |
| | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court are Defendants' Motions to Dismiss the First Amended Complaint. ECF Nos. 36, 50, 52, 68.  On June 5, 2023, the Court heard argument on the Motions.

For the reasons stated below, the Motions are **GRANTED**.  The Court concludes that Plaintiff has failed to state a claim for relief under the Racketeer Influenced and Corrupted Organizations Act ("RICO"), 18 U.S.C. §§ 1961–68, and declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims.

### I.    BACKGROUND

Plaintiff Munck Wilson Mandala brings RICO and state law claims against eleven Defendants—five individuals and seven entities—arising out of Plaintiff's lease of office space at Banner Place, a commercial property located at 12770 Coit Road in Dallas, Texas.  *See* ECF No. 30 ("FAC").

Specifically, Plaintiff contends that Defendants Mark D. Jordan and Bradford Phillips are the ringleaders of a RICO enterprise, referred to by Plaintiff as the "Sooner Enterprise."  *Id.* ¶¶ 2, 5, 9; *see also* ECF No. 80 ("RICO Case Statement") ¶¶ 5, 7, 9.  According to Plaintiff, the

Sooner Enterprise consists of Jordan, Phillips, Laura Maczka-Jordan, Scot Florsheim, Louann

Hall, and Liberty Bankers Life Insurance Company ("LBLIC"), acting in concert with entities

owned or controlled by Jordan and/or Phillips, including Defendants JP-Banner GP, LLC, JP-

Banner, LP,[1] Sooner National Property Management, L.P. ("Sooner"), JP Realty Partners, Ltd.,

Banner Investors, LLC, and multiple other non-party single purpose entities allegedly controlled

by Jordan.  *Id.* ¶¶ 2, 121.

  The FAC alleges that the Sooner Enterprise operated a scheme to defraud innocent

investors in, and tenants of, commercial office buildings.  Specifically, Plaintiff alleges that, in

the 2017 to 2019 time period, the Sooner Enterprise's "modus operandi" consists of the

following steps: (1) purchasing a commercial property through a single purpose entity formed by

Jordan, which is controlled by Jordan or Phillips and in which third parties invest; (2) employ

Sooner—an entity owned, operated, and controlled by Jordan—to manage the newly purchased

property, so as to give Jordan control over management of the property; (3) overcharge tenants

for "bogus and fictitious" operating expenses, while simultaneously providing substandard

services to tenants; and (4) use the investment proceeds and tenant's rental income to enrich and

for the benefit of the Sooner Enterprise's beneficiaries.  *Id.* ¶ 136.  Plaintiff alleges that the

named Defendants contribute to the Sooner Enterprise in various ways, either by soliciting

investments and providing allegedly fraudulent information to investors (JP Realty Partners,

Ltd., Banner Investors, LLC, and Scot Florsheim), assisting in property management and the

alleged concealment of fraudulent charges to tenants (Sooner, Laura Maczka-Jordan, Florsheim,

and Louann Hall), or becoming a secured lender (LBLIC and Phillips).  *See id.* ¶ 121.

---

[1] The First Amended Complaint uses "JP-Banner" when referring to the limited partnership, and "JP-Banner, GP" when referring to the general partner of the limited partnership.  To avoid confusion, the Court will refer to these two entities as "JP-Banner, LP" and "JP-Banner GP, LLC."

Plaintiff claims that, as a tenant of Banner Place, it is a victim of the Sooner Enterprise's unlawful activities.  On May 30, 2007, Plaintiff's predecessor entered into a lease with Gaedeke Holdings II, Ltd. ("Gaedeke") for office space in Banner Place.  *See* FAC Ex. 2 (ECF 30-2) (the "Lease").  The Lease was extended several times.  On May 27, 2010, Plaintiff's predecessor executed the Fourth Amendment to the Lease, which extended the term to 2025.  *Id.* ¶ 47.

The monthly rental amount under the Lease includes both a fixed and variable costs for operating expenses, "OPEX," which are estimated based on costs for a "base year."  *Id.* ¶ 43. The OPEX portion of the monthly rent is to be held separately, so it can be reconciled with actual operating expenses at the end of the year.  *Id.* ¶¶ 44–45.  The Lease provides that, if the actual expenses exceed estimated expenses, as collected through rent payments, Plaintiff is required to pay the difference in costs; if actual expenses are lower than the amount collected, Plaintiff receives a credit.  *Id.*

In the fall of 2016, Gaedeke listed Banner Place for sale.  In early 2017, JP-Banner, LP purchased Banner Place.  Plaintiff characterizes JP-Banner, LP as one of the single purpose entities controlled by Jordan,[2] which the Sooner Enterprise employs to achieve its unlawful goals of defrauding investors and tenants.  *Id.* ¶ 121(k).

Before the sale, Defendants Jordan and Florsheim allegedly verbally represented to Plaintiff that, after the purchase of Banner Place, they would promptly invest $750,000 to upgrade the building to a "Class A" property, while lowering OPEX significantly through the employment of Sooner, a company 99.9% owned by Jordan through Defendant JP Realty Partners, Ltd.  *Id.* ¶¶ 12, 27–28.  Plaintiff also alleges that, in addition to the oral representation, Jordan and Florsheim sent pitch emails to potential investors indicating that OPEX would

---

[2] The general partner of JP Banner, LP, is Defendant JP-Banner GP, LLC, which is in turn owned by non-party J&P Realty Services, Inc., an entity claimed to be controlled by Jordan.  FAC ¶ 27.

increase after the sale; Plaintiff alleges that Defendants provided these conflicting representations—*i.e.*, that OPEX would both increase and decrease after the property was purchased—to "create a paper trail which justifie[d] future fraudulent overcharges of tenant operating expenses." *Id.* ¶¶ 13–14.  Plaintiff claims it relied on these alleged misrepresentations regarding upgrades and decreased OPEX when it invested money into JP Banner, LP as a limited partner and amended its lease, thus becoming both a tenant and investor.  *Id.* ¶ 20.

On February 21, 2017, after the sale, Plaintiff and JP-Banner, LP executed a Sixth Amendment to the Lease, which transferred landlord and property management service responsibilities to JP-Banner, LP and Sooner.  *Id.* ¶ 49.  Plaintiff alleges that, after Sooner began to handle management, operating cost credits to Plaintiff began to decrease (*i.e.*, OPEX increased), while the quality of services provided to tenants began to decrease.  *Id.* ¶¶ 53–55.

Plaintiff claims its experience was part of the Sooner Enterprise's scheme to defraud tenants, through which Jordan directed Sooner "to surreptitiously reduce the services provided to Plaintiff (and other Banner Place tenants) on the one hand, provide fraudulent year-end operating reports to Plaintiff (and other tenants) on the other hand, and then invoice Plaintiff for additional fictitious 'excess costs.'"  *Id.* ¶ 22.  The FAC recites various ways that Plaintiff alleges JP-Banner, LP and Sooner fraudulently increased the property's OPEX, including, *inter alia*, by inflating the square footage of the building as the basis for determining occupancy percentages (for expenses that vary with occupancy), inflating management fees owed to Sooner, improperly charging salaries of individuals working for Sooner as operating expenses, and charging for janitorial services not performed.  *Id.* ¶¶ 63–107.  Plaintiff alleges that these inflated operational costs were funneled into the Sooner Enterprise's "slush fund," for Defendants' benefit.  *Id.* ¶ 152.   Plaintiff similarly alleges that Defendants never invested the $750,000 in upgrades to

Banner Place, as promised prior to the purchase, and instead improperly redirected those funds for the benefit of the Enterprise.  *Id.* ¶ 158.

Plaintiff exercised its rights under the lease and engaged a third-party auditor to conduct a lease audit of the OPEX reported by JP-Banner, LP for 2017, 2018, and 2019.  *Id.* ¶ 58. According to Plaintiff, the audits showed that Plaintiff had been overcharged in each of these years, but Defendants have allegedly refused to reimburse Plaintiff for the overcharges.  *Id.* ¶ 59. Plaintiff argues that, based on the allegedly improper inflation of OPEX charged to Plaintiff, Plaintiff should have been credited at least $419,007.00 for OPEX in 2017 and 2018, and at least $104,601 for OPEX in 2019.  *Id.* ¶ 110.   Plaintiff further alleges that Defendants have not yet provided OPEX reports for 2020 or 2021, in breach of the lease.  *Id.* ¶ 62.

On July 29, 2022, Plaintiff filed suit.  The current live pleading is the First Amended Complaint, in which Plaintiff asserts against all Defendants claims for violations of RICO, a violation of 18 U.S.C. § 1962(c), and for RICO conspiracy, under 18 U.S.C. § 1962(d).  In addition, Plaintiff asserts claims under Texas state law; specifically, claims against all Defendants for civil conspiracy, unjust enrichment, and money had and received; a claim against Jordan, Florsheim, Hall, JP-Banner, LP, Sooner, and JP-Banner, GP for fraud and/or fraudulent inducement; a claim against JP-Banner, LP for breach of contract; and a claim for conversion against all Defendants except LBLIC and Phillips.  On February 28, 2023, at the Court's request, Plaintiff filed a RICO Case Statement.  *See* RICO Case Statement, ECF No. 80.

## II.    LEGAL STANDARD

In reviewing a Rule 12(b)(6) motion, the Court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff.  *Sonnier v. State Farm Mutual Auto. Ins. Co*., 509 F.3d 673, 675 (5th Cir. 2007); *Martin K. Eby Constr. Co. v.*

*Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Applying the "plausibility" standard from *Iqbal* and *Twombly*, the Fifth Circuit has held that:

> In construing the allegations in the complaint, the Court is obliged to disregard "legal conclusions; mere 'labels'; '[t]hreadbare recitals of the elements of a cause of action'; 'conclusory statements'; and 'naked assertions devoid of further factual enhancement.'"

*Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011) (en banc) (footnotes omitted).

Indeed, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "A sheer possibility that a defendant has acted unlawfully" is not sufficient to satisfy a plaintiff's pleading obligations. *Iqbal*, 556 U.S. at 678; *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011).

When alleging fraud or mistake, a complaint is subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b), requiring a plaintiff to "state with particularity the circumstances constituting fraud." *Williams v. WMX Techs. Inc.*, 112 F.3d 175, 177 (5th Cir. 1997); Fed. R. Civ. P. 9(b). This requires "at a minimum" that a plaintiff provide the "'who, what, when, where, and how' of the alleged fraud." *U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997) (quoting *Williams*, 112 F.3d at 179).

## III.   ANALYSIS

Defendants move to dismiss Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(1) and (6), arguing that Plaintiff has not stated a claim upon which relief can be granted, and should the Court conclude that Plaintiff has not stated a claim under RICO, the Court should decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claims. The

Court agrees.  For the following reasons, the Court concludes Plaintiff has not stated a claim for

a violation of RICO under 18 U.S.C. § 1962(c), or RICO conspiracy under 18 U.S.C. § 1962(d).

### a.  Plaintiff has not plausibly stated a claim for relief under RICO.

To state a claim for a violation of RICO's substantive provisions under § 1962(c),

Plaintiff must plausibly allege that Defendants engaged in conduct of an enterprise through a

pattern of racketeering activity.  *Molina-Aranda v. Black Magic Enterprises, L.L.C.*, 983 F.3d

779, 784 (5th Cir. 2020).  The statute defines "racketeering activity" to mean, among other

things, any act indictable under specified federal statutes, including mail and wire fraud statutes.

*See* 18 U.S.C. § 1961(1). "The acts comprising racketeering activity are commonly known as

predicate acts."  *Dennis v. Gen. Imaging, Inc*., 918 F.2d 496, 511 (5th Cir. 1990).

At the outset, the Court is skeptical that Plaintiff has plausibly alleged that all named

Defendants were engaged in a RICO enterprise.[3]  However, even if the Court assumes that

Plaintiff has sufficiently alleged a RICO enterprise, the Court concludes that Plaintiff has not

plausibly stated that the alleged Sooner Enterprise engaged in unlawful racketeering activity

under RICO, let alone a "pattern" of unlawful activity.  The Court will address each in turn.

---

[3] To demonstrate the existence of an association-in-fact enterprise among these Defendants, Plaintiff must provide evidence of an (1) ongoing organization that (2) exists separate and apart from the alleged pattern of racketeering; and which (3) functions as a continuing unit as shown by a hierarchical or consensual decision-making structure. *Allstate Ins. Co. v. Plambeck*, 802 F.3d 665, 673 (5th Cir. 2015).  "Since an association in fact enterprise must have an existence separate and apart from the pattern of racketeering, proof of a pattern of racketeering activity does not necessarily establish a RICO enterprise."  *Calcasieu Marine Nat. Bank v. Grant*, 943 F.2d 1453, 1462 (5th Cir. 1991) (citation omitted).  Although Plaintiff argues that it can allege the existence of an enterprise simply by alleging an "organizational structure," *see, e.g.*, ECF No. 70 at 10, the Fifth Circuit has instead specified that "continuity of . . . structure and personnel, which links the defendants," is the "linchpin of enterprise status," along with "a common or shared purpose." *Calcasieu*, 943 F.2d at 1462 (internal quotation mark omitted).  Here, although there is a clear connection between some of the alleged members of the Sooner Enterprise—such as, for example, Sooner and its employees and owners—such that one could infer the existence of a continuing unit with a hierarchical or consensual decision-making structure, the FAC lacks such allegations for other alleged members. For example, Defendant Banner Investors, LLC, is described as an entity set up "for the purposes of soliciting real estate investors" for the acquisition of Banner Place; however, Plaintiff does not allege how Banner Investors, LLC functioned as part of the alleged *continuing* unit after Banner Place was acquired.  *See* FAC ¶ 121(j).

### i. Plaintiff has not alleged that the Sooner Enterprise engaged in racketeering activity sufficient to state a claim under RICO.

Plaintiffs bring civil RICO claims against all Defendants based on predicate acts of mail and wire fraud.  Mail and wire fraud claims require: (1) a scheme to defraud; (2) the use of mails or, if by wire, the interstate use of the wires to execute the scheme; (3) the use of mails or wires being incident to the essential execution of the scheme; and (4) actual injury to the plaintiff. *United States v. Humphrey*, 104 F.3d 65, 70 n.3 (5th Cir. 1997); *Landry v. Air Line Pilots Ass'n*, 901 F.2d 404, 428 (5th Cir. 1990).  Rule 9(b) requires particularity in pleading the circumstances constituting fraud; this requirement applies to the pleading of fraud as a predicate act in a RICO claim.  *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc*., 975 F.2d 1134, 1138 (5th Cir. 1992).

Plaintiff alleges that the Sooner Enterprise engaged in a pattern of racketeering activity of wire and mail fraud, by sending emails and mailed correspondence that included "false and fraudulent OPEX Reports, invoices, and other communications intended to induce Plaintiff to pay for services and expenses that Sooner did not perform or intend to perform, pay for a portion of Banner Place's operating expenses that Sooner did not intend to properly reconcile, and conceal the nature or purpose of the Sooner Enterprise's scheme."  FAC ¶¶ 164, 167, 185.  The FAC contains numerous allegations of such predicate acts of wire and mail fraud, all allegedly in furtherance of Defendants' scheme to induce Plaintiffs to pay for services and expenses that Sooner did not perform or intend to perform.

There are at least two fatal problems with Plaintiff's substantive RICO claim as pleaded.  First, Plaintiff's claims amount only to disputes arising under the Lease, which, without more, is insufficient to state a RICO violation.  And second, Plaintiff does not plausibly allege the predicate acts of mail and wire fraud under Rule 9(b).

Regarding the first issue, the Court acknowledges that RICO was drafted "broadly enough to encompass a wide range of criminal activity, taking many different forms and likely to attract a broad array of perpetrators operating in many different ways." *See H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 248–49 (1989).  However, the Fifth Circuit observed recently, "[w]e must be wary of transforming business-contract or fraud disputes into federal RICO claims." *Arruda v. Curves Int'l, Inc.*, 861 F. App'x 831, 836 (5th Cir. 2021); *see also Zastrow v. Houston Auto Imports Greenway Ltd.*, 789 F.3d 553, 562 (5th Cir. 2015) ("The district court properly granted summary judgment on Zastrow's breach of contract claim dressed in civil RICO garb."); *Annulli v. Panikkar*, 200 F.3d 189, 200 (3d Cir. 1999) ("[I]f garden-variety state law crimes, torts, and contract breaches were to constitute predicate acts of racketeering (along with mail and wire fraud), civil RICO law, which is already a behemoth, would swallow state civil and criminal law whole.").  In *Johnson Enters. of Jacksonville, Inc. v. FPL Grp., Inc.*, 162 F.3d 1290, 1317–18 (11th Cir. 1998), the Eleventh Circuit held that undue delay in paying invoices could not support a RICO claim where the delay amounted to nothing more than a breach of the parties' agreement regarding timeliness of payment, even if the delay was done intentionally and for an extortionate purpose.

Admittedly, courts have recognized that breaches of contract, in some circumstances, may be a component of a scheme to defraud under RICO.  *See, e.g.*, *Perlman v. Zell*, 185 F.3d 850, 853 (7th Cir. 1999) ("Breach of contract is not fraud, and a series of broken promises therefore is not a pattern of fraud. It is correspondingly difficult to recast a dispute about broken promises into a claim of racketeering under RICO.  Difficult is not impossible. Sometimes the evidence shows outright lies and a plan not to keep one's promises—enough of them to meet RICO's continuity-plus-relationship formula for a 'pattern.'" (citations omitted)).  Such schemes

require more than a defendant's failure to deliver or keep one's promise, such as proof that the promisor never intended to honor the contract, or affirmative misrepresentations or deceptive conduct. *See, e.g.*, *Conkling v. Turner*, 18 F.3d 1285, 1297 (5th Cir. 1994) (RICO claim dismissed after jury found no fraud in the execution of a stock redemption agreement).

Here, the Court concludes that Plaintiff's allegations arising out of its tenancy at Banner Place cannot sustain a RICO claim. The essence of Plaintiff's complaint is that Defendants charged Plaintiff excess or improper OPEX for services not provided, and achieved that in part through use of the mails and email to send reports, invoices, and/or communications intended to justify improper charges. Considering the allegations in the FAC collectively and in the light most favorable to the Plaintiff, the Court concludes that Plaintiff has not managed to recast its complaints regarding inflated OPEX fees and missing services into anything more than a breach of contract claim based on a disagreement with charges levied under the Lease Agreement.

Plaintiff relies primarily on the inclusion of allegedly fraudulent charges in the OPEX Reports for expenses not incurred or unperformed services as constituting criminal activity—namely, wire and mail fraud—under RICO. Indeed, seemingly all of Plaintiff's alleged predicate acts consist of the mailing of invoices or OPEX Reports, or emails through which Defendants allegedly furthered the scheme by providing justification for supposedly phony charges. For example, the FAC describes how Defendant Hall mailed to Plaintiff correspondence "containing the 2019 Actuals, the 2019 General Ledger, and the 2019 Final OPEX," the last of which was "false or misleading" and sent in furtherance of the Sooner Enterprise's scheme because "it purported to justify the expenses Sooner purported to incur and thus fraudulently retain Plaintiff's funds." *Id.* ¶ 167(m). As another example, the FAC describes a July 21, 2019, email from Hall to Plaintiff regarding an incident where a member of the cleaning staff entered a

closed office belonging to one of Plaintiff's employees.  *Id.* ¶ 167(k).  Plaintiff alleges that, in the email, "Hall assured Plaintiff that Sooner had been clear on requirements for cleaning crew and security," and the email was sent "in furtherance of the Sooner Enterprise's scheme in order to assure Plaintiff that Sooner would actually provide the required services and thus justify the expenses Sooner intended to charge Plaintiff."  *Id.*

However, the FAC admits—and the Lease attached to the FAC provides—that certain expenses, *i.e.*, OPEX, are to be charged to Plaintiff under the Lease, calculated and communicated to Plaintiff a certain way, and that Plaintiff has certain audit rights and remedies to challenge those expenses.  Plaintiff concedes that the Sooner Enterprise provides some legitimate services, including acting as a landlord and providing property management services to tenants, and that there are costs associated with those services.  *See* FAC ¶¶ 21, 49, 80, 122–23, 138–39.  The thrust of Plaintiff's complaint is disagreement with how much it was charged for certain services or expenses Plaintiff contends were improperly calculated or are excluded from OPEX under the Lease.  For example, Plaintiff takes issue with the cost and quality of the janitorial services provided by Sooner after the sale of Banner Place, and challenges restroom and janitorial supplies included as expenses in the 2017, 2018, and 2019 OPEX reports.  *Id.* ¶¶ 80–87.  Similarly, Plaintiff disagrees with the management fees charged by Sooner as exceeding those "rendered by qualified, first-class unaffiliated third parties on a competitive basis," the maximum permitted under the Lease.  *Id.* ¶¶ 70–73.

These alleged fraudulent or false charges identified by Plaintiff do not rise to the level of mail or wire fraud sufficient to state a predicate act under RICO.  Other courts have found that, where fees at issue are authorized by contract, an allegation that the fees were assessed improperly cannot sustain a RICO cause of action.  *See Gemstone Foods, LLC v. AAA Foods*

*Enterprises, Inc.*, No. 5:15-CV-01179-MHH, 2022 WL 439538, at *8 (N.D. Ala. Feb. 12, 2022)

(summarizing cases); *In re Checking Acct. Overdraft Litig.*, 797 F. Supp. 2d 1323, 1332 (S.D.

Fla. 2011) ("[W]rongful overcharges, . . . when permitted by contract, are not synonymous with

the meaning of 'misrepresentation' in the context of the RICO statute."); *Braswell Wood Co.,

Inc. v. Waste Away Grp., Inc.*, No. 2:09-CV-891-WKW[WO], 2010 WL 3168125 (M.D. Ala.

Aug. 10, 2010) ("[E]very incipient billing dispute is not a 'misrepresentation' from the time a

bill is mailed to a customer, even if the customer ultimately prevails on the merits of the dispute.

. . . [T]o hold that a wrongfully charged fee constitutes, in itself, a misrepresentation, would be to

broaden the word's meaning, and the reach of RICO, past the point of meaning.").

  Here, the communications alleged as predicate acts pertain to charges and services

Defendants claim were provided for and permitted under the Lease.  That a fee or expense is

disputed does not alone render it false or fraudulent.  Besides the inclusion of fees or pass-

through expenses that Plaintiff characterizes as too high, improperly assessed, or for services

unperformed, Plaintiff identifies no other allegedly fraudulent behavior—such as, for example,

falsifying documents or concealing information—to transform this otherwise run-of-the-mill

landlord/tenant dispute into a cognizable racketeering claim.  *See, e.g.*, *Norfolk S. Ry. Co. v.

Boatright R.R. Prods., Inc*., 2021 WL 1264237, at *6 (N.D. Ala. Apr. 6, 2021) (finding proof of

mail or wire fraud separate from, but related to, contractual duties, where defendants used

counterfeit substances and false treatment reports to conceal and falsely represent that orders

were fulfilled according to contractual specifications); *In re Managed Care Litig.*, 298 F. Supp.

2d 1259, 1278 (S.D. Fla. 2003) (plaintiffs sufficiently alleged a fraudulent scheme under RICO

arising out of a commercial contract "based upon the failure to disclose a plethora of automated

processing techniques to diminish, deny or delay payments").  Here, although the FAC is replete

with language stating that Defendants "concealed" or falsified reports and invoices, the only alleged falsities identified are the disputed OPEX expenses which, as discussed, do not qualify as "misrepresentations" sufficient to plead mail or wire fraud.  Put differently, Plaintiff's allegations contend only that the *charges* are fraudulent or falsified; conspicuously absent from the FAC are any allegations satisfying Rule 9(b) that any Defendant provided falsified documents, invoices, or reports, or otherwise made affirmative misrepresentations or false statements to Plaintiff.

Instead of concealment, Plaintiff's own allegations admit that Defendants disclosed the complained-of expenses and challenged OPEX calculations in the 2017, 2018, and 2019 OPEX reports.  For example, Plaintiff complains that JP-Banner, LP and Sooner "manipulated square footage" and "fraudulent grossed up expenses" by including an additional 5,000 square feet in Banner Place's rentable area when determining building occupancy for certain occupancy-based expenses.  FAC ¶¶ 67–68 (alleging that the 2017 and 2018 OPEX Reports fraudulently grossed up expenses using 285,111 square feet as the basis for determining occupancy percentage, rather than 280,432 square feet, the rental area stipulated in the Lease).  Such a manipulation of charges could feasibly support an allegation of fraud if it were concealed from Plaintiff.  *See, e.g.*, *Gemstone*, 2022 WL 439538, at *8–9 (jury verdict finding a scheme to defraud upheld where evidence showed defendant "was able to adjust her fee for her services without detection" and co-defendant "ensured she was paid whatever she decided to bill without explanation").  However, the 2017 and 2018 OPEX reports attached to the FAC reflect that Defendants disclosed to Plaintiff that occupancy-based expenses for those two years were being calculated using the complained-of larger rental area, *i.e.*, Defendants did not disclose or hide it.  *See* FAC Ex. 3 (ECF No. 30-3) at 4; FAC Ex. 4 (ECF No. 30-4) at 4.  Indeed, *all* of Plaintiff's complaints regarding OPEX expenses, management fees, and alleged overcharging stem from the OPEX

13

reports Defendants provided, and although Plaintiff complains of the inclusion of certain expenses or calculation of certain charges, there are no allegations that Defendants altered figures, created fictitious invoices, or failed to disclose key information in such a way as would transform Plaintiff's contractual disputes under the Lease into a federal RICO claim.

The lack of any plausible allegations that Defendants withheld information or made affirmative false statements also goes to the second fatal flaw with Plaintiff's RICO claim, the failure to satisfy Rule 12(b)(6) or the heighted pleading requirements under Rule 9(b). As discussed, Plaintiff asserts only claim arising out of the Lease; absent additional facts, these allegations of breach of contract do not state a claim for mail or wire fraud. *See United States v. Kreimer,* 609 F.2d 126, 128 (5th Cir.1980) ("[T]he [mail fraud] statute does not reject all business practices that do not fulfill expectations, nor does it taint every breach of a business contract."); *see also United States v. D'Amato*, 39 F.3d 1249, 1261 n.8 (2d Cir. 1994) ("A breach of contract does not amount to mail fraud."); *McEvoy Travel Bureau, Inc. v. Heritage Travel, Inc.*, 904 F.2d 786, 791 (1st Cir. 1990) ("Nor does a breach of contract in itself constitute a scheme to defraud.").

In addition, the Court concludes that the FAC does not plausibly allege facts specifying each individual Defendant's contribution to the alleged mail or wire fraud, or any factual basis giving rise to a strong inference of fraudulent intent so as to satisfy Rule 9(b). Although in alleging a RICO scheme involving mail or wire fraud, "it is not necessary to assert that each defendant personally made fraudulent mailings or wires; rather 'Rule 9(b) requires that the plaintiff allege facts specifying each defendant's contribution to the fraud.'" *D'Arcy Petroleum, LLC v. Buster*, No. 3:19-CV-02770-M, 2020 WL 13157811, at *4 (N.D. Tex. Aug. 17, 2020) (quoting *Cypress/Spanish Ft. I, L.P. v. Prof'l Serv. Indus., Inc.*, 814 F. Supp. 2d 698, 711 (N.D.

Tex. 2011)).  In addition, for claims alleging fraud, scienter allegations must meet the heightened

pleading requirements of Rule 9(b).  *See Marriott Bros. v. Gage*, 704 F. Supp. 731, 740 (N.D.

Tex. 1988), *aff'd* 911 F.2d 1105 (5th Cir. 1990).  Thus, while "intent can be averred generally

. . . a RICO mail fraud averment must nonetheless provide some 'factual basis for conclusory

allegations of intent,' which must, in turn, give rise to a 'strong inference' of fraudulent intent."

*Id.*; *see also Ranieri v. AdvoCare Int'l, L.P.*, 336 F. Supp. 3d 701, 716 (N.D. Tex. 2018).

Here, the FAC often refers to "Defendants" or "the individual Defendants" collectively

when making statements regarding knowledge and intent, such that each Defendant's alleged

individual contribution to the fraud is generalized and unspecific, and does not support a strong

inference of fraudulent intent for any particular Defendant.  For example, the FAC does not

attribute to Defendant Maczka-Jordan any of the predicate acts of mail or wire fraud, *see* FAC

¶ 167, nor claim that she made any representations to investors from which fraudulent intent

might be inferred; instead, her contributions to the alleged criminal enterprise consist of the

conclusory and general allegation that she participated "in Sooner's concealment of fraudulent

charges to tenants and the knowing misuse of tenants OPEX for her own enrichment."  FAC

¶ 121(g).  Indeed, the specific allegations about Maczka-Jordan in the FAC consist almost

entirely of recounting details of an unrelated criminal conviction, *id.* ¶¶ 134–35, and thus

Plaintiff does not plausibly allege Maczka-Jordan's specific contribution to or a basis to

plausibly infer intent to commit the fraud alleged here.

These pleadings deficiencies are not limited to Maczka-Jordan.  Only five of the eleven

Defendants—Florsheim, JP-Banner, LP; JP-Banner, GP; Hall; and Sooner—are named in the

portions of the FAC describing the predicate acts, and although Plaintiff need not allege that each

personally committed an act of mail or wire fraud, it is required to allege facts specifying each

15

Defendant's contribution to the fraud.  *See D'Arcy Petroleum*, 2020 WL 13157811, at *4.  As discussed, the alleged fraud relates to Plaintiff's complaints regarding OPEX charges and expenses, and in particular, relies on expenses detailed in the 2017, 2018, and 2019 OPEX reports.  The FAC does not plausibly explain how Banner Investors, LLC, described as being involved in the 2017 purchase of Banner Place and solicitation of investors, contributed to an alleged fraud regarding building expenses post-purchase.  Likewise, the FAC states that on June 30, 2020, LBLIC became the secured mortgage lender of JP-Banner, LP, but does not plausibly explain how LBLIC's participation in this lending relationship—which began after the specified predicate acts took place—contributed to the alleged fraud.  *See id.* ¶¶ 160–61.

Instead, the FAC relies on generalized allegations of connections between the various Defendants as a shorthand for alleging each Defendants' participation in the scheme.  Plaintiff alleges that Defendant JP Realty Partners, Ltd. is the entity that owns Sooner, but otherwise makes no specific allegations about JP Realty Partners, Ltd.'s contribution to or role in the scheme.  Likewise, the FAC describes Phillips—LBLIC's CEO and an alleged ringleader of the Sooner Enterprise—as Jordan's "lifelong friend," but provides no allegations from which one could plausibly infer that Phillips had any knowledge of the fraud or intent to contribute to it, let alone act as a leader of the scheme.  *See id.* ¶ 121(g); *see also* RICO Case Statement ¶¶ 2, 5, 7, 9.  Such lack of detail as to each Defendant renders Plaintiff's claims against these Defendants implausible and deficient under Rule 9(b).  *See Com. Metals Co. v. Chazanow*, 2009 WL 3853704, at *4 (N.D. Tex. Nov. 17, 2009) ("Where, as here, multiple defendants are alleged to have contributed to the fraudulent predicate acts, a 'plaintiff must plead with sufficient particularity attribution of the alleged misrepresentations or omissions to each defendant; the

plaintiff is obligated to distinguish among those they sue and enlighten each defendant as to his or her part in the alleged fraud.'" (quotation marks omitted)).

For the remaining individual Defendants—Jordan, Florsheim, and Hall—Plaintiff has not provided any facts that give rise to a "strong inference" of intent to commit the alleged fraud or to induce Plaintiff to pay for inflated OPEX charges reflecting services and expenses that Sooner did not perform or intend to perform. *See Ranieri*, 336 F. Supp. 3d at 716. The predicate acts recount communications by Florsheim, Hall, or Sooner employees—at the direction of Sooner, which is alleged to be controlled by Jordan—which are all consistent with a legitimate, non-criminal landlord/tenant relationship, such as providing financial statements and reports, or responding to tenant inquiries. *See, e.g.*, FAC ¶ 167(b) (describing an email sent by a Sooner employee representing that "Sooner was continuing to improve on the deficiencies in security and janitorial services"); *id.* ¶ 167(c) ("Florsheim sent an email to Plaintiff containing JP Banner, LP's financial statements for the year 2017."). Thus, the facts alleged in support of the predicate acts do not provide a reasonable basis from which fraudulent intent can be inferred.

Plaintiff does not provide any non-conclusory allegations that support an inference of fraudulent intent. For instance, ¶ 167(l) of the FAC describes a mid-year update email sent from Florsheim to Plaintiff which Plaintiff characterizes as "false in that it promised upcoming improvements to the Banner Place that Defendants did not intend to complete," but provides no facts from which that intent not to complete improvements could be inferred. Moreover, "nondisclosure of an intent not to perform a contract generally cannot be used to bootstrap a fraud claim, since the mail and wire fraud statutes only proscribe representations designed to defraud." *In re Managed Care Litig.*, 298 F. Supp. 2d 1259, 1277 (S.D. Fla. 2003) (citing *McNally v. United States*, 483 U.S. 350, 357 (1987), *abrogated by statute on other grounds, as*

*recognized in Percoco v. United States*, 143 S. Ct. 1130, 1136 (2023)).  Moreover, as discussed, the fact that Defendants disclosed the allegedly "false" charges and bases for calculating OPEX to Plaintiff—thereby informing Plaintiff directly of the alleged "fraudulent" activity— undermines any inference of fraudulent intent, since there was no misrepresentation about the basis for Defendants' calculation of OPEX.

For the foregoing reasons, the Court concludes that Plaintiff has not plausibly alleged that Defendants engaged in racketeering activity in the form of mail and wire fraud.  None of Plaintiff's arguments warrant a different result.  Plaintiff points to the various allegations in the FAC which, according to Plaintiff, sufficiently demonstrate that its claims arise from criminal activities of the Sooner Enterprise, as opposed to merely a breach of contract.  *See* ECF No. 54 at 13.  First, Plaintiff points to allegations recounting Defendants' allegedly false statements, made prior to the sale of Banner Place, regarding projected OPEX decreasing.  *See* ¶¶ 12–13.  These allegations of do not satisfy Rule 9(b), because the FAC does not specify where or when the verbal representation that OPEX would decrease occurred, or who heard the misrepresentation on behalf of Plaintiff.  *See* FAC ¶ 12.  In addition, Plaintiff's own pleadings undermine its allegations that the complained-of statements were false, given that Plaintiff admits, prior to Plaintiff's investment, that Defendants represented in writing that forecast OPEX would increase after Defendants' purchase of Banner Place.  *See id.* ¶¶ 12–13.

Next, Plaintiff points to allegations regarding allegedly fraudulent charges for expenses not incurred.  *See* FAC ¶¶ 83–86, 96–100.  These allegations recount the inclusion of certain charges relating to janitorial supplies and "HVAC and Fire/Life Safety" purportedly improperly included in OPEX reports despite having no basis in the Lease.  Specifically, Plaintiff contends that, under the Lease, janitorial supplies should be included in the contract between Sooner and

the vendor providing janitorial services, but instead were improperly passed through as OPEX to be paid by Plaintiff.  *Id.* ¶¶ 85–86.  Similarly, Plaintiff contends that "HVAC and Fire/Life Safety" charges were included in the 2017 OPEX report, but the associated invoice reflects services by a company specializing in interior office finishes, and thus do not qualify as operating expenses.  *Id.* ¶¶ 96–100.  Given the absence of any allegations that Defendants attempted to conceal these charges, or any allegations of fraudulent scienter that pass muster under Rule 9(b), the Court again finds that these allegations do not transform Plaintiff's breach complaints into a RICO claim.  *See, e.g.*, *id.* ¶ 100 (alleging, without factual allegations to support such an inference, that "JP-Banner [LP], Sooner, Jordan, Florsheim, and later, Hall, all knew that [these charges] were not operating expenses for Banner Place").

Plaintiff also points to Jordan's and Maczka-Jordan's criminal convictions for bribery and tax fraud in an effort to elevate this otherwise contractual dispute into a criminal enterprise. *See id.* ¶¶ 135–36.  The Supreme Court has recognized that "proof that a RICO defendant has been involved in multiple criminal schemes would certainly be highly relevant to the inquiry into the *continuity* of the defendant's racketeering activity."  *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 240 (1989) (emphasis added).  However, given the other pleading deficiencies in the FAC, the Court declines to extend that reasoning to find that Plaintiff's claims plausibly allege criminal mail and wire fraud scheme—involving nine other individuals and entities, none of whom are alleged to have previously committed any crimes—solely on the basis of Jordan and Maczka-Jordan's prior convictions for bribery and tax fraud.  Moreover, those convictions are now on appeal, relying on the conviction defendant for allegedly similar charges recently reversed by the Fifth Circuit.  *See United States v. Jordan*, Case No. 22-40519, Dkt. No. 95-2, at 1(5th Cir. Mar. 23, 2023) (citing *United States v. Hamilton*, 46 F.4th 389 (5th Cir. 2022)).

Finally, Plaintiff points to the Sooner Enterprise's alleged history of fraudulent conduct toward other victims as indicative of a criminal enterprise, as opposed to a mere breach of contract.  FAC ¶¶ 125–33.  The Court agrees that plausible allegations of the Sooner Enterprise engaging in fraudulent or misleading behavior outside the confines of the Lease could support a claim for a criminal enterprise.  However, as will be discussed in more detail in the Court's explanation of why Plaintiff has not alleged a "pattern" of racketeering, the FAC does not plausibly allege that the Sooner Enterprise has engaged in a history of similar fraudulent conduct toward other victims, *i.e.*, using its network to purchase commercial properties, employ its own management company, and use that management company to conjure up false invoices and fraudulent OPEX to steal from tenants.

For the foregoing reasons, the Court concludes that the FAC has not plausibly alleged that the Sooner Enterprise engaged in racketeering activity.

### ii.  Plaintiff has not alleged a pattern of racketeering activity.

The Court concludes that the FAC does not allege a pattern of racketeering activity, because besides Plaintiff's own alleged injuries, Plaintiff does not plausibly allege any other transaction involving the same alleged criminal enterprise.

A pattern of racketeering activity "consists of two or more predicate criminal acts that are (1) related and (2) amount to or pose a threat of continued criminal activity."  *Abraham v. Singh*, 480 F.3d 351, 355 (5th Cir. 2007).  Courts refer to this as the "relationship prong" and the "continuity prong."  *See, e.g.*, *id.*

Predicate acts are related if they "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events."  *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 240 (1989).  A "threat of continued criminal activity," or "continuity," "is both a closed-and open-ended concept,

referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *Id*. at 241. Aside from the "closed-end" and "open-end" framework, the Fifth Circuit has held that "where alleged RICO predicate acts are part and parcel of a single, otherwise lawful transaction, a 'pattern of racketeering activity' has not been shown." *Word of Faith World Outreach Ctr. Church, Inc. v. Sawyer*, 90 F.3d 118, 123 (5th Cir. 1996).

In the FAC, Plaintiff lists various predicate acts of mail and/or interstate wire fraud, including emails sent to Plaintiff by Florsheim or employees of Sooner, and monthly invoices sent via mail and email which included information about the rent due. *See* FAC ¶¶ 167–68. Defendants argue that, in this case, most charitably viewed, "the RICO allegations which relate to or arise out of OPEX Reports for 2017, 2018 delivered together in early 2019 and a separate OPEX report for 2019 delivered in 2020 only evidence, at best, a single alleged victim, a single alleged plan or scheme and at most, three discrete acts." ECF No. 37 at 20. Defendants argue that because Plaintiff's allegations only identify a "single victim, Plaintiff, the FAC does not satisfy the "repeated conduct" requirement for predicate acts under RICO.

The Court agrees. The alleged "predicate acts" are all part of the same single transaction and involve the same "victim." Plaintiff has not alleged any act of fraud or predicate act directed at Plaintiff outside of the fraud alleged in the OPEX reports. For example, although Plaintiff identifies many single purpose entities used by Jordan in other real estate transactions, the FAC does not allege that any of these entities fraudulently overcharged tenants or falsified their books or records, or that any of those entities committed any act of fraud that would satisfy the requirements of Rule 9(b). Absent some allegations of similar predicate acts involving *other*

21

victims or taking place in *other* buildings with similar claims of inflated OPEX charges, Plaintiff has not shown a pattern of racketeering activity.

Plaintiff points to paragraphs of the FAC reciting allegations in other lawsuits involving other purported "victims" of the Sooner Enterprise. *See* FAC ¶¶ 125–33. None of these lawsuits have proceeded to judgment. Significantly, the allegations in the lawsuits refer primarily to Jordan, in conjunction with Sooner, using single purpose entities to shield himself from personal liability related to various real estate transactions; however, none of the allegations recited in these other lawsuits relate to tenant disputes regarding OPEX charges, and thus lack the criminal "hook" necessary to suggest that these prior lawsuits reveal criminal conduct, as opposed to merely commercial disputes.

Moreover, the "predicate acts" here are all instances of mailing invoices or OPEX reports, or emails between the parties. Emails between parties in an otherwise lawful arrangement alone does not constitute racketeering activity. *See Jones v. Lampe*, 845 F.2d 755, 757 (7th Cir. 1988) ("[M]ultiple acts of mail fraud in furtherance of a single episode of fraud involving one victim and relating to one basic transaction cannot constitute the necessary pattern."); *D&T Partners v. Baymark Partners LP*, No. 3:21-CV-1171-B, 2022 WL 13829913, at *6 (N.D. Tex. Oct. 21, 2022) ("The Court resists Plaintiffs' attempt to establish a pattern of racketeering simply by tallying every back-and-forth email Defendants sent.").

Accordingly, the Court need not resolve what type of continuity—*i.e.*, the "open" or "closed" varieties discussed by the Supreme Court—is alleged, given that the predicate acts all involve the same Plaintiff and Defendants, and are not part of a larger scheme. "Continuity cannot be established by multiple acts of fraud that are part of a single transaction." *Orthoflex, Inc. v. ThermoTek, Inc.*, No. 3:10-CV-2618-D, 2012 WL 2864510, at *3 (N.D. Tex. July 12,

2012); *see also Word of Faith* World *Outreach Ctr. Church, Inc. v. Sawyer*, 90 F.3d 118, 123 (5th Cir. 1996) ("It is unnecessary to delve into the arcane concepts of closed-end or open-ended continuity under RICO. [Fifth Circuit precedent] make[s] clear that where alleged RICO predicate acts are part and parcel of a single, otherwise lawful transaction, a 'pattern of racketeering activity' has not been shown.").

For the foregoing reasons, the Court determines that Plaintiff has failed to state a claim for a substantive RICO offense under 18 U.S.C. § 1962(c).  Accordingly, Plaintiff has likewise failed to state a claim for RICO conspiracy.  *See United States v. Delgado*, 401 F.3d 290, 296 (5th Cir. 2005) (to prove a RICO conspiracy, the Plaintiff must establish (1) that two or more people agreed to commit a substantive RICO offense and (2) that the defendant knew of and agreed to the overall objective of the RICO offense).

Moreover, given that Plaintiff has already amended its pleadings once in light of a motion to dismiss filed by Defendants, the Court finds that repleading in this instance would be futile. The Court has concluded that the crux of Plaintiff's allegations do not trigger liability under RICO, and thus repleading to provide additional specificity would not overcome the fundamental deficiencies of Plaintiff's RICO claim.  Accordingly, leave to amend will not be granted.

### b. The Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims.

Having determined that Plaintiff has not stated a claim for violation of RICO or RICO conspiracy, the Court now considers whether to exercise supplemental jurisdiction over Plaintiff's remaining state law claims.  Under 28 U.S.C. § 1367(c)(3), the district court can decline to exercise supplemental jurisdiction if the district court has dismissed all claims over which it has original jurisdiction.  "[T]he 'general rule is that a court should decline to exercise jurisdiction over remaining state-law claims when all federal-law claims are eliminated before

trial, but this rule is neither mandatory nor absolute.'" *See The Lamar Co., L.L.C. v. Mississippi Transportation Comm'n*, 976 F.3d 524, 528 (5th Cir. 2020), as revised (Sept. 24, 2020) (quoting *Brookshire Bros. Holding, Inc. v. Dayco Prods., Inc.*, 554 F.3d 595, 602 (5th Cir. 2009)).

Here, no scheduling order has been entered and no discovery has taken place. Given that the case is at a relatively early stage and minimal judicial resources have been invested in this case, the Court determines that dismissal of the state law claims is appropriate, without prejudice to Plaintiff refiling them in state court.

## IV.   CONCLUSION

For the foregoing reasons, the Court concludes that Plaintiff has not stated a claim for a violation of RICO under 18 U.S.C. § 1962(c), or RICO conspiracy under 18 U.S.C. § 1962(d), justifying dismissal of those claims. In the absence of any remaining federal claims, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims. Accordingly, Defendants' Motion to Dismiss are **GRANTED** with prejudice as to Plaintiff's RICO claims, and without prejudice as to Plaintiff's remaining claims being filed in state court.

**SO ORDERED**.

August 22, 2023.

BARBARA M. G. LYNN
SENIOR UNITED STATES DISTRICT JUDGE