IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MUNCK WILSON MANDALA LLP, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:22-cv-01657-M |
| | § | |
| MARK D. JORDAN, et al., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is the Motion for Attorneys' Fees, Costs, and Other Litigation Expenses (ECF No. 93), filed by Defendant JP-Banner, L.P. ("Landlord"), and Notices of Joinder in the Motion, filed by Defendants Liberty Bankers Life Insurance Company and Bradford A. Phillips (ECF No. 95), and Defendants Mark D. Jordan, Laura Maczka-Jordan, JP-Banner G.P., LLC, Sooner National Property Management, L.P., JP Realty Partners, Ltd., and Banner Investors, LLC (ECF No. 96). For the reasons stated below, the Motion is **GRANTED IN PART** and **DENIED IN PART**.

I. BACKGROUND

In 2022, Plaintiff Munck Wilson Mandala filed suit against eleven Defendants, asserting claims under the Racketeer Influenced and Corrupted Organizations Act ("RICO"), 18 U.S.C. §§ 1961–68 and state law claims arising out of Plaintiff's lease of office space at Banner Place, a commercial property located at 12770 Coit Road in Dallas, Texas. *See* ECF No. 30 ("FAC"). Specifically, Plaintiff asserted against all Defendants claims for violations of RICO, a violation of 18 U.S.C. § 1962(c), and for RICO conspiracy, under 18 U.S.C. § 1962(d), and in addition,

1

Plaintiff asserted claims against all Defendants for civil conspiracy, unjust enrichment, and money had and received; a claim against Mark D. Jordan, Scot Florsheim, Hall, JP-Banner, LP, and Sooner National Property Management, L.P. ("Sooner"), and JP-Banner, GP for fraud and/or fraudulent inducement; a claim against Landlord for breach of contract; and a claim for conversion against all Defendants except Liberty Bankers Life Insurance Company ("LBLIC") and Phillips.

Plaintiff alleged that Defendants Mark Jordan and Bradford Phillips were the ringleaders of the "Sooner Enterprise," which operated a scheme to defraud innocent investors in, and tenants of, commercial office buildings, including Plaintiff as a tenant of Banner Place. Specifically, on May 30, 2007, Plaintiff's predecessor entered into a lease for office space in Banner Place. *See* FAC Ex. 2 (ECF 30-2) (the "Lease"); relevant here, on February 21, 2017, Plaintiff and Landlord executed a Sixth Amendment to the Lease, which transferred landlord and property management service responsibilities to Landlord and Sooner. *Id.* ¶ 49.

On August 22, 2022, the Court granted Defendants' Motion to Dismiss, concluding that Plaintiff had not stated a claim for a violation of RICO under 18 U.S.C. § 1962(c), or RICO conspiracy under 18 U.S.C. § 1962(d), justifying dismissal of those claims. ECF No. 90. In the absence of any remaining federal claims, the Court declined to exercise supplemental jurisdiction over Plaintiff's remaining state law claims, and dismissed the case. Landlord now seeks fees, costs, and litigation expenses; other Defendants—namely, all except for Scot Florsheim and Louann Hall—have joined in the request for fees.

II. ANALYSIS

Landlord seeks attorneys' fees in the amount of $71,717.04 and other litigation expenses of $1,167.94, as well as $29,810.50 in pre-litigation fees and $32,300 in conditional appellate

fees.  In addition, on behalf of LBLIC and its CEO, Bradford Phillip (the "Liberty Parties"), Landlord seeks attorneys' fees in the amount of $36,368.25 and litigation expenses of $491.61; on behalf of Sooner, Mark Jordan, and Laura Jordan (the "Sooner Parties"), Landlord seeks attorneys' fees in the amount of $63,288.

### a. Landlord (JP-Banner, LP)

Under the "American Rule," "[e]ach litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise."  *Peter v. Nantkwest, Inc*., __ U.S. __, 140 S. Ct. 365, 370 (2019) (quoting *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 252–253 (2010)); *see also Dallas Cent. Appraisal Dist. v. Seven Inv. Co*., 835 S.W.2d 75, 77 (Tex. 1992) ("Attorney's fees may not be recovered unless provided for by statute or by contract between the parties.").

Landlord seeks to recover its own fees and costs pursuant to § 40(a) of the Lease, which states, "[i]n any suit or other dispute between Landlord and Tenant, the prevailing party will be entitled to recover its reasonable attorneys' fees, court costs, and other litigation expenses." Lease § 40(a).  Having reviewed the Lease and the relevant governing authority, the Court concludes that Landlord is entitled to recover its reasonable fees and expenses associated with defending Plaintiff's RICO claims under § 40(a).  Plaintiff's claims asserted against Landlord in this lawsuit fall within the scope of § 40(a); the parties agreed that fees and other expenses incurred by the prevailing party in "*any* suit or other dispute" shall be recoverable, without limitation.  Moreover, having successfully dismissed the RICO claims with prejudice, Landlord is the prevailing party as to Plaintiff's RICO claims. *See, e.g.*, *Conwill v. Greenberg Traurig, L.L.P.*, 448 F. App'x 434, 436 (5th Cir. 2011) ("Defendants–Appellants were the prevailing parties in this [RICO] action because they obtained a favorable final judgment dismissing the

federal claim with prejudice and the sole remaining state claim was dismissed without prejudice.").

In response, Plaintiff does not dispute that the plain text of § 40(a) of the Lease awards fees, costs, and expenses to the prevailing party in any dispute between Plaintiff and Landlord, or that Landlord qualifies as the prevailing party in this dispute. Instead, Plaintiff argues that Landlord's request is premature, that the RICO statute precludes awarding fees to a prevailing Defendant pursuant to a contract, and that Landlord's request is overbroad, and contains several categories of unrecoverable or unreasonable fees.

Plaintiff's arguments are unpersuasive. As to timing, there is no basis to delay the Court's determination of Plaintiff's liability regarding attorneys' fees and costs until after Plaintiff's appeal is resolved, as the Court may condition execution of the fee award on the outcome of the appeal. *See, e.g.*, *Raniere v. Microsoft Corp.*, No. 3:15-CV-0540-M, 2016 WL 4626584, at *2 (N.D. Tex. Sept. 2, 2016) ("It is most efficient to make [the attorneys' fee] determination now while the facts are fresh in the Court's mind."). Plaintiff likewise asks the Court to delay awarding fees because Plaintiff has numerous state law claims that it may still assert and prevail upon, which could result in an award of fees to Plaintiff. However, the fact that Plaintiff may ultimately assert, prevail on, and be entitled to fees associated with claims that the Court has dismissed without prejudice does not affect Defendants' potential entitlement to fees for claims which Defendants have already prevailed on in *this* suit, *i.e.*, Plaintiff's RICO claims. As will be discussed, any fees or costs awarded by this Court will be limited to those incurred in defending against the RICO claims.

Next, Plaintiff contends that the RICO statute precludes awarding fees to a prevailing defendant, even pursuant to a contractual agreement. The provision of RICO governing

4

attorneys' fees, 18 U.S.C. § 1964(c), awards fees to a prevailing plaintiff, but does not discuss whether a defendant who prevails on a RICO claim is entitled to fees. Plaintiff contends that awarding fees to a defendant who prevails under RICO would defeat the "remedial purposes" of RICO as a private enforcement mechanism, relying primarily on cases discussing a fee-shifting provision contained in the Clayton Antitrust Act of 1914, 15 U.S.C. § 12 *et seq*, which Plaintiff contends is analogous to the fee-shifting provision under RICO. *See, e.g.*, *Byram Concretanks, Inc. v. Warren Concrete Prod. Co. of N.J.*, 374 F.2d 649, 651 (3d Cir. 1967) ("We hold that in the absence of specific legislative authorization[,] attorneys' fees may not be awarded to defendants in private anti-trust litigation.").

Plaintiff concedes, however, that neither the Supreme Court nor the Fifth Circuit have addressed whether a prevailing RICO defendant can recover fees when authorized to do so outside the statute. *See* ECF No. 101 at 13 n.6. Indeed, Plaintiff provides no case—binding or otherwise—in which the court adopted the position Plaintiff is urging here, and declined to award fees provided for by contract to a prevailing RICO defendant, on the grounds that RICO's remedial purpose precludes such an award. In contrast, the Ninth Circuit has considered the question, and concluded that "[b]ecause the RICO statute does not preclude prevailing defendants from recovering attorneys' fees when authorized elsewhere, . . . it does not preclude prevailing defendants from recovering attorneys' fees when specified by an agreement of the parties." *Chang v. Chen*, 95 F.3d 27, 28 (9th Cir. 1996).

Here, the agreement between Plaintiff and Landlord specifies that Landlord shall recover attorneys' fees, costs, and expenses when it is the prevailing party in "any suit or other dispute." Lease § 40(a). In using this broad language, the parties did not exclude or limit the types of cases for which recovery would be available, such as RICO cases or cases arising out of the

5

terms of the Lease. In the absence of any binding authority to the contrary, the Court will enforce as written the parties' agreement regarding the availability of fees, costs, and expenses. *Interstate Contracting Corp. v. City of Dallas, Tex.*, 407 F.3d 708, 712 (5th Cir. 2005) ("The court's primary concern is to enforce the parties' intent as contractually expressed, and an unambiguous contract will be enforced as written.").

Thus, having determined that Landlord is not contractually, statutorily, or otherwise barred from recovering its fees and expenses under § 40(a) of the Lease, the Court will consider whether the amount that Landlord requests as fees and other litigation expenses is reasonable. The Court applies a two-step process to determine the appropriate amount of attorneys' fees to award. *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 323–24 (5th Cir. 1995). First, the Court determines the lodestar, which it arrives at by determining the reasonable number of hours expended on the litigation and multiplying that number by the reasonable hourly rates for the participating lawyers. *Id.* at 324. The Court then decides whether to accept the lodestar or adjust it, taking into account the factors enumerated in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).[1] *Id.* at 329.

The Court will first address Landlord's request for attorneys' fees in the amount of $71,717.04 and other litigation expenses of $1,167.94. The Court has reviewed Landlord's evidence, including detailed invoices, billing records, and the declaration of Landlord's attorney Mitchell Madden, of Holmgren Johnson: Mitchell Madden, LLP ("HJMM"). ECF No. 94-1. This evidence shows that, from August 2, 2022, through September 5, 2023, three partners and

---

[1] The *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the legal issues; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney as a result of taking the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or other circumstances; (8) the monetary amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) whether the case is undesirable; (11) the nature and duration of the professional relationship with the client; and (12) awards in similar cases. *See Johnson*, 448 F.2d at 717–19.

one paralegal from HJMM spent 281.06 total hours representing Landlord in this case, and that these attorneys billed their time at hourly rates ranging from $300 to $340 per hour.[2] ECF Nos. 94-1 at 5, 94-3.

The evidence submitted in support of Landlord's fee request demonstrates that the hourly rates charged by HHJM are in line with those prevailing in the community for similar services by lawyers of reasonable comparable skill, experience, and reputation.  *See Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984).  Plaintiff does not challenge the rates charged by HHJM's attorneys. The Court determines that the hourly rates charged by HHJM are reasonable.

Plaintiff challenges HHJM's billing entries as containing numerous vague and unspecific descriptions, and as being too heavily redacted to allow meaningful review, and requests that such entries be eliminated from the lodestar.  Plaintiff provides selective examples of allegedly problematic entries in support of its position that the lodestar should be "significantly reduced," but provides no calculation or proposed percentage by which the lodestar should be reduced. ECF No. 101 at 24–25.  However, the Court has reviewed the relevant bills in full and has determined that, although occasional entries are thin on details, the descriptions overall do not lack sufficient detail so as to be unable to discern the nature of the services being provided, or so unintelligible as to prevent meaningful review.  As a result, there is no basis to reduce Landlord's fee request due to vagueness of time entries.  Plaintiff further challenges HJMM's entries as lacking evidence of billing judgment, *i.e.*, "a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary."  *See Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).  However, Plaintiff does not identify any particular entries that appear to be

---

[2] The evidence indicates that HJMM's paralegal billed her time on this case at $185 per hour.

duplicative, redundant, or excessive, and given that HHJM's bills are otherwise reasonable, the Court declines to reduce the lodestar on the basis of lack of billing judgment.

Multiplying the reasonable number of hours expended by each attorney on the litigation by the reasonable hourly rate charged by HJMM representing Landlord results in a lodestar of $79,685.50.  Neither Landlord nor Plaintiff contend that the lodestar should be reduced pursuant to the *Johnson* factors.  ECF Nos. 94-1 at 11, 101 at 22 n.12.

Landlord does, however, propose that the lodestar be decreased by 10% to reflect HHJM's work on state law claims, which have been dismissed without prejudice and for which Landlord is not a prevailing party.  Plaintiff agrees that segregation between the RICO and non-RICO state claims is appropriate, but contends that the 10% reduction is inadequate, and "does not account for the fact that each defendant raised specific challenges to the state law claims that were not applicable to the RICO claim, taking up significant portions of their briefing."  ECF No. 101 at 26.  However, the Court notes that evidence provided by Landlord, namely the declaration of Mr. Mitchell, shows that based on the billing statements and his knowledge of HHJM's work, approximately 10% of the fees incurred were spent on defending the state law claims.  ECF No. 94-1 at 12.  Plaintiff provides no reason to doubt the veracity of Mr. Mitchell's representation, and no authority for the proposition that the Court should use the amount of a brief dedicated to a particular argument as a proxy for the amount of time spent defending a particular claim.  Thus, the Court agrees that the lodestar should be reduced by 10%, or $7,968.56, to reflect unrecoverable fees incurred in connection with the state law claims.

Landlord requests $1,167.94 in other litigation expenses incurred in defending the RICO claims, namely legal research fees and copying; Plaintiff does not challenge these requested costs, *see* ECF No. 101 at 22 n.13, and the Court finds that they are reasonable.

In addition, Landlord requests a conditional appellate fee in the amount of $32,300, in connection with HJMM's representation of Landlord on appeal, at rates similar to those charged before this Court.[3] It is well-established precedent that a party entitled to recover attorney's fees and costs at trial is also entitled to recover them for successfully defending the case on appeal. *DP Solutions, Inc. v. Rollins, Inc.*, 353 F.3d 421, 436 (5th Cir. 2003). Here, Landlord contends the requested fees are reasonable in that they reflect 103 hours of estimated work by HHJM attorneys, as set forth in Mr. Mitchell's declaration, namely 24 hours to review the opening brief, 14 hours for research, 40 hours to prepare a responsive brief, 15 hours to review the reply brief, and 10 hours to prepare for and attend oral argument. ECF No. 94-1 at 13. Plaintiff contends that HHJM's estimations are mere guesswork, lacking any evidence from which the Court can determine whether the estimated hours are reasonable. The Court disagrees, and determines that, based on the evidence presented and its own experience, HHJM's estimated hours are reasonable, provided that Landlord is successful on appeal and that the fees are actually incurred.

Finally, Landlord requests $29,810.50 in attorneys' fees incurred prior to suit, namely in HHJM's representation of Landlord from June 2018 through May 2021. *See* ECF No. 94-6. In his declaration, Mr. Mitchell describes these fees as being incurred in connection with "claims and allegations made" by Plaintiff regarding the Lease, such as providing "a detailed analysis of the terms of the Lease and the impact those terms had on the claims, allegations, and demands" of Plaintiff, responding to an audit report and related documents, the "negotiation and drafting of an agreement whereby [Plaintiff's] interest in the project was repurchased," and communications regarding Plaintiff's "renewed audit claims and demands." ECF No. 94-1 at 3.

---

[3] Specifically, HHJM would charge $340 per hour for Mr. Mitchell's time, and $315 per hour for other HHJM partners.

The Court concludes that Landlord has not carried its burden to demonstrate that these pre-litigation fees are recoverable under the Lease. Landlord is only entitled to recover for fees and expenses for disputes for which it is the prevailing party, *i.e.*, Plaintiff's RICO claims. Landlord does not explain how this pre-litigation representation was reasonably and necessarily incurred in defense of those RICO claims—which, at the time these fees were incurred, had not yet been asserted—as opposed to some other unrecoverable claim. To the extent Landlord contends these pre-litigation fees relate to some other dispute, it does not adequately explain how it qualifies as the prevailing party, so as to trigger recovery for fees and expenses under § 40(a) of the Lease.

Any remaining objections to Landlord's request for reasonable attorneys' fees, costs, and other litigation expenses are denied. The Court therefore determines that Landlord is entitled to recover $71,717.04 in reasonable attorneys' fees, plus $1,167.94 in other litigation expenses. In addition, the Court awards Landlord up to $32,300 in appellate fees, conditioned upon Landlord's success on appeal.

### b. Remaining Defendants (Liberty Parties and Sooner Parties)

The remaining Defendants—the Liberty and Sooner Parties—seek attorneys' fees and expenses pursuant to the Lease's indemnification provision, § 18(b), which provides that Plaintiff, as Tenant, "will Indemnify and Defend Landlord Parties against, *inter alia*, "[a]ny breach, violation or nonperformance of any obligation of Tenant under this Lease." Lease § 18(b). The remaining Defendants contend that they all qualify as "Landlord Parties" under the Lease, and thus are eligible for indemnification. *See* Lease § 1(p). These Defendants further contend that Plaintiff violated the Lease—thereby triggering § 18(b) and Plaintiff's obligation to indemnify Landlord Parties—when, in addition to suing Landlord, Plaintiff named the Liberty

10

and Sooner Parties in this lawsuit. Specifically, § 19 of the Lease provides that Landlord's liability for any act, omission, or breach under the Lease would be recoverable exclusively from the proceeds of a judicial sale, and that Tenant waives all other rights of recovery against any Landlord Party, and all claims against any Landlord Party for consequential, incidental, or punitive damages. Thus, the remaining Defendants maintain that by including them in the lawsuit—despite having already waived any right of recovery or claim for damages against them—Plaintiff violated the Lease, thereby triggering the indemnification provision.

The Court disagrees. "As a general rule, an indemnity provision does not apply to claims between the parties to an agreement." *Sam Rayburn Mun. Power Agency v. Gillis*, No. 09-16-00339-CV, 2018 WL 3580159, at *18 (Tex. App.—Beaumont July 26, 2018, no pet.) (citing cases); *see also, e.g.*, *Nat'l City Mortg. Co. v. Adams*, 310 S.W.3d 139, 144 (Tex. App.—Fort Worth 2010, no pet.) ("[A] contract of indemnity does not relate to liability claims between the parties to the agreement but, of necessity, obligates the indemnitor to protect the indemnitee against liability claims of persons not a party to the agreement."); *Equitable Recovery, L.P. v. Heath Ins. Brokers of Texas, L.P.*, 235 S.W.3d 376, 387 (Tex. App.—Dallas 2007, pet. denied) ("There can be no contribution or indemnity between two parties based on a direct claim between them.").

Thus, even assuming that the remaining Defendants qualify as Landlord Parties and qualify as potential indemnitees, there is no basis for indemnification based on the direct claim asserted by Plaintiff against Defendants. *See Sam Rayburn*, 2018 WL 3580159, at *18 (a would-be indemnitee "bears the burden to prove that the indemnity provision is applicable, that is, that a third party has filed a claim . . . , or the indemnity clause expressly includes language indicating that it also applies to direct claims between the indemnitor and indemnitee."). Even if it did, Defendants cannot sidestep their obligation to assert, plead, and prove their alleged claim for

11

indemnification by fashioning it as a mere motion for attorneys' fees. *See, e.g.*, *Wallerstein v. Spirt*, 8 S.W.3d 774, 779 (Tex. App.—Austin 1999, no pet.) ("[A]n indemnity creates a potential *cause of action* between the indemnitee and the indemnitor." (emphasis added)). Put differently, Defendants ask that the Court affirmatively find that Plaintiff violated the § 19 of the Lease, thereby entitling Defendants to indemnification, without asserting or proving any counterclaim for breach of contract or indemnification. The Court declines to do so. Because the Liberty and Sooner Parties point to no other basis to award fees, their request for fees and expenses is denied.

### III.  CONCLUSION

For the foregoing reason, Landlord JP-Banner, LP's Motion for Attorneys' Fees, Costs, and Other Litigation Expenses is **GRANTED** as follows: Landlord JP-Banner, LP is entitled to recover $71,717.04 in reasonable attorneys' fees, $1,167.94 in other litigation expenses, and up to $32,300 in appellate fees, conditioned upon Landlord's success on appeal. All other requests for fees, costs, or expenses are **DENIED.**

**SO ORDERED**.

May 20, 2024.

_____
BARBARA M. G. LYNN
SENIOR UNITED STATES DISTRICT JUDGE